1  Kane Moon (SBN 249834)
       kane.moon@moonyanglaw.com
2  H. Scott Leviant (SBN 200834)
       scott.leviant@moonyanglaw.com
3  **MOON & YANG, APC**
   1055 W. Seventh St., Suite 1880
4  Los Angeles, California 90017
   Telephone: (213) 232-3128
5  Facsimile: (213) 232-3125

6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

| 11 | GERALD WARR, individually, and on behalf of all others similarly situated, | Case No.: |
|----|----|----|
| 12 | | **CLASS ACTION** |
| 13 | *Plaintiff,* | **COMPLAINT:** |
| 14 | vs. | 1.  Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act); |
| 15 | CENTRAL GARDEN & PET COMPANY; and, DOES 1-10, | 2.  Violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c) (Fair Credit Reporting Act); |
| 16 | *Defendants.* | 3.  Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act |
| 17 | | **DEMAND FOR JURY TRIAL** |
| 18 | | |
| 19 | | |
| 20 | | |

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................i

I.      INTRODUCTION .............................................................................................................1

II.     JURISDICTION AND VENUE ........................................................................................1

III.    PARTIES............................................................................................................................2

IV.     CLASS ALLEGATIONS...................................................................................................3

V.      GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION............................5

        A.      Application for Employment...........................................................................5

FIRST CAUSE OF ACTION ......................................................................................................7

FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF THE FCRA ........................7

SECOND CAUSE OF ACTION.................................................................................................16

FAILURE TO GIVE PROPER SUMMARY OF RIGHTS IN VIOLATION OF FCRA ................16

THIRD CAUSE OF ACTION....................................................................................................18

FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF ICRAA .............................18

PRAYER FOR RELIEF .............................................................................................................21

DEMAND FOR JURY TRIAL ..................................................................................................22

COMES NOW, Plaintiff GERALD WARR (hereafter "Plaintiff"), on behalf of himself and all others similarly situated, complains and alleges as follows:

**I.      INTRODUCTION**

1.      Plaintiff brings this class action against defendant CENTRAL GARDEN & PET COMPANY, a publicly-traded business operating in the gardening and pet food sectors; and DOES 1 through 10, inclusively (collectively referred to as "Defendants") for alleged violations of the Fair Credit Reporting Act ("FCRA") and similar California laws.

2.      Plaintiff alleges that Defendants routinely acquire consumer, investigative consumer and/or consumer credit reports (referred to collectively as "credit and background reports") to conduct background checks on Plaintiff and other prospective, current and former employees and use information from credit and background reports in connection with their hiring process without providing proper disclosures and obtaining proper authorization in compliance with the law.

3.      Plaintiff, individually and on behalf of all others similarly situated current, former, and prospective employees, seeks statutory, compensatory and punitive damages due to Defendants' systematic and willful violations of the FCRA, 15 U.S.C. §§ 1681 *et seq.*, and the California Investigative Consumer Reporting Agencies Act ("ICRAA") (Cal. Civ. Code § 1786, *et seq.*).

**II.     JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1331 because these claims seek redress for violation of Plaintiff's and the putative class' federal statutory rights under the Fair Credit Reporting Act (15 U.S.C. §§ 1681 *et seq.*).

5.      This Court has supplemental jurisdiction over Plaintiff's and the putative class' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's and the putative class' FCRA claims that they form parts of the same case or controversy under Article III of the United State Constitution.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred in this District.

7.      This Court has personal jurisdiction over this matter because Defendants conduct

substantial business activity in this District, and because many of the unlawful acts described in this complaint occurred in this District and gave rise to the claims alleged.

**III.    PARTIES**

8.    Plaintiff was employed by Defendant as a non-exempt employee from about November 2019 to about February 2020.

9.    Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant CENTRAL GARDEN & PET COMPANY, is, and at all times herein mentioned, was:

    (a)    A Delaware company that has designated Walnut Creek, California as its principal business office in California according to its latest Statement of Information on file with the California Secretary of State;

    (b)    A company that maintains branches, facilities, and offices from which it transacts business in a variety of locations in Contra Costa County, and Defendant is otherwise within this Court's jurisdiction for purposes of service of process; and

    (c)    A business entity qualified to conduct business, and actually conducting business, in numerous counties throughout the State of California; and,

    (d)    The former employer of Plaintiff, and the current and/or former employer of the putative Class.  Central Garden & Pet Company suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions.

10.    Plaintiff is ignorant of the true names, capacities, relationships, and extent of participation in the conduct alleged herein, of the defendants sued as DOES 1 through 10, inclusive, but is informed and believes and thereon alleges that said defendants are legally responsible for the wrongful conduct alleged herein and therefore sues these defendants by such fictitious names.  Plaintiff will amend the Complaint to allege the true names and capacities of the DOE defendants when ascertained.

11.    Plaintiff is informed and believes and thereon alleges that, at all relevant times herein, all Defendants were the agents, employees and/or servants, masters or employers of the remaining defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such

agency or employment, and with the approval and ratification of each of the other Defendants.

12.     Plaintiff alleges that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

## IV.     CLASS ALLEGATIONS

13.     This action has been brought and may be maintained as a class action pursuant to Fed. R. Civ. P. 23.  This action has been brought and may be maintained as a class action pursuant to Fed. R. Civ. P. 23 because there is a well-defined community of interest among many persons who comprise the classes defined below.

14.     **Class Definitions**: The classes are defined as follows:

(a)     **FCRA Class**:  All of Defendants' current, former and prospective applicants for employment in the United States who applied for a job with Defendants at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action.

(b)     **ICRAA Class**:  All of Defendants' current, former, and prospective applicants for employment in California, at any time during the period beginning five years prior to the filing of this action and ending on the date that final judgment is entered into this action.

15.     **Revisions to Proposed Class Definitions**:  Plaintiff reserves the right to amend or modify the class definitions by further division into subclasses and/or by limitation to particular issues and/or to exclude improper constituents as may subsequently prove necessary.

16.     **Numerosity**:  The class members are so numerous that the individual joinder of each individual class member is impractical.  While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes that the actual number exceeds the minimum required for numerosity under federal law.

17.    **Commonality and Predominance:**  Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These questions include, but are not limited to:

      (a)    Whether Defendants willfully failed to provide the class with clear and conspicuous, stand-alone written disclosures before obtaining a credit or background report in compliance with the statutory mandates?

      (b)    Whether Defendants willfully failed to identify the name, address, telephone number, and/or website of the investigative consumer reporting agency conducting the investigation?

      (c)    Whether Defendants willfully failed to identify the source of the credit report to be performed?

      (d)    Whether Defendants willfully failed to comply with the FCRA and/or the ICRAA?

18.    **Typicality:**  Plaintiff's claims are typical of the other class members' claims. Plaintiff is informed and believes and thereon alleges that Defendants have a policy, practice or a lack of a policy which resulted in Defendants failing to comply with the FCRA and ICRAA as alleged herein.

19.    **Adequacy of Class Representative:**  Plaintiff is an adequate class representative in that he has no interests that are adverse to, or otherwise in conflict with, the interests of absent class members. Plaintiff is dedicated to vigorously prosecuting this action on behalf of class members. Plaintiff will fairly and adequately represent and protect the interests of class members.

20.    **Adequacy of Class Counsel:**  Plaintiff's counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiff or absent class members, are experienced in class action litigation and are dedicated to vigorously prosecuting this action on behalf of Plaintiff and absent class members.

21.    **Superiority:**  A class action is vastly superior to other available means for fair and efficient adjudication of class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many

individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## V.  GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22.    When Plaintiff applied for employment with CENTRAL GARDEN & PET COMPANY, Defendants required him to fill out a disclosure and authorization form to perform a background investigation.

23.    The disclosures provided by Defendants contained extraneous and superfluous language that does not consist solely of the disclosure as required by federal and state laws.

24.    Plaintiff was presented with disclosures spread across at least three different forms by Defendants, with some duplicated and some inconsistent language, making it impossible to determine whether all, some, or one of the forms constitutes the disclosures required by law.

### A.    Application for Employment

25.    On or about November 25, 2019, Plaintiff was required to fill out an application for employment with additional, included forms that contained all manner of extraneous and superfluous language that does not comply with the law as it is not a clear and conspicuous disclosure in a writing that consist solely of the disclosure and a bare authorization to conduct a background investigation.  A true and correct copy of the collection of documents constituting the application and additional forms is attached as Exhibit A.[1]

26.    For example, one of the authorization pages is entitled "ACKNOWLEDGMENT AND AUTHORIZATION," which exceeds the bare authorization permitted under the FCRA.  That page also states: "I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND

---

[1] Certain personal information, such as telephone numbers, the home address, and an email address have been redacted.

INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents."  That same authorization contains multiple statements related to the laws of various states, which constitutes impermissible surplusage.

27.     At the end of the application, it contained an attestation that also included a release of liability for all forms of background check.  The following language *italicized* are considered by Plaintiff to be extraneous and superfluous:

> Applicant's Certification and Agreement
>
> ***I certify that the information shown on this application is true and correct to the best of my knowledge***. I authorize previous employers and references, except those indicated to the contrary on this application, to furnish Central Garden & Pet such information as it considers necessary to evaluate my qualifications for employment. ***I hereby release Central Garden & Pet from any / all liability of whatever kind and nature which, at any time, could result from obtaining and making an employment decision based on such information***.
>
> I understand that, if employed, falsified statements of any kind or omissions of facts called for on this application shall be considered sufficient basis for dismissal. I consent to ***and understand that, if employed, that I will be required to complete*** a background check and a drug screen as a condition of employment. If applying for a position requiring driving on the job, ***I understand that I must be reasonably insurable as determined by the Company in its sole discretion***.
>
> Employment at Central Garden & Pet is considered "at-will" which means that either the employee or the Company is free to end the employment relationship at any time with or without cause. Only the officers of the Company may authorize contracts of employment other than at-will and only if that contract is a written document which is signed by an officer of the Company.

28.     On or about November 25, 2019, as part of the application packet Plaintiff was given a page entitled "DISCLOSURE AND AUTHORIZATION" (the "Notice") which contained extraneous language and superfluous information that violates the requirements of the FCRA.

29.     In addition, also on or about November 25, 2019, and as part of the application packet, Plaintiff was given a page entitled "ACKNOWLEDGMENT AND AUTHORIZATION" that contained extraneous language and superfluous information that violates the requirements of the FCRA and the ICRAA.

30.     The application, the DISCLOSURE AND AUTHORIZATION page, and the ACKNOWLEDGMENT AND AUTHORIZATION page violate the FCRA's standalone requirement in

numerous ways, including but not limited to the following:

- The ACKNOWLEDGMENT AND AUTHORIZATION contains numerous provisions about different states, including New York, Minnesota, Oklahoma, and California.

- The ACKNOWLEDGMENT AND AUTHORIZATION incorporates not one, but two other documents by stating: "I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents."

- By placing the acknowledgement of receipt before language stating, "I hereby authorize the obtaining of 'consumer reports' and/or 'investigative consumer reports' by the Company at any time after receipt of this authorization and throughout my employment, if applicable."

31.     Because the application, the ACKNOWLEDGMENT AND AUTHORIZATION and the DISCLOSURE AND AUTHORIZATION all refer to background investigations, Plaintiff and other average reasonable class members are likely to view the forms as collectively stating a singular body of information about consumer background checks.  At minimum, it is not possible to ascertain whether one, all, or just some of the pages are intended to constitute the required disclosures.  Thus, the release in application appears to release claims in violation of the law, and nothing that follows suggests otherwise.  Rather, the detailed "acknowledgments" in the ACKNOWLEDGMENT AND AUTHORIZATION and at the end of the application only strengthen the conclusion that the release and representations in the application are a part of the consumer background check process.  The result is a set of materials that violate federal and state law in numerous way with respect to consumer background investigations.

## FIRST CAUSE OF ACTION

### FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF THE FCRA

**(15 U.S.C. §§ 1681b(b)(2)(A))**

**(By Plaintiff and the FCRA Class Against All Defendants)**

32.     <u>Incorporation of preceding allegations</u>:  Plaintiff incorporates all paragraphs of this Complaint as if fully alleged herein.

33.     Defendants are "persons" as defined by Section 1681a(b) of the FCRA.

34.     Plaintiff and **FCRA Class** members are "consumers" within the meaning Section 1681a(c) of the FCRA, because they are "individuals."

35.     Section 1681a(d)(1) of the FCRA defines "consumer report" as

> any oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for employment purposes.

As defined, a credit and background report qualifies as a consumer report.

36.     Section 1681a(e) of the FCRA defines "investigative consumer report" as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with whom he is acquainted or who may have knowledge concerning any such items of information.

As defined, a credit and background report qualifies as an investigative consumer report.

37.     Section 1681b(b) of the FCRA provides, in relevant part:

> Conditions for furnishing and using consumer reports for employment purposes
>
> (2) Disclosure to consumer
>
> > (A) In general
> >
> > > Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> > >
> > > > (i) a **_clear and conspicuous_** disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that **_consists solely of the disclosure_**, that a consumer report may be obtained for employment purposes; and
> > > >
> > > > (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. (Emphasis Added).

38.     Section 1681b(b)(2)(A)(i) requires that a clear and conspicuous disclosure be made in writing.

39.     As described above, Plaintiff alleges, on information and belief, that in evaluating him and other class members for employment, Defendants procured or caused to be prepared credit and

background reports (i.e., a consumer report and/or investigative consumer report, as defined by 15 U.S.C.

§ 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e)).

40.     The purported disclosures do not meet the requirements under the law because they are embedded with extraneous information and are not clear and unambiguous disclosures in a stand-alone document.

41.     Under the FCRA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).  The inclusion of a release and other extraneous information, therefore, violates § 1681b(b)(2)(A) of the FCRA.

42.     Although the disclosure and the authorization may be combined in a single document, the Federal Trade Commission ("FTC") has warned that the form should not include any extraneous information or be part of another document.  For example, in response to an inquiry as to whether the disclosure may be set forth within an application for employment or whether it must be included in a separate document, the FTC stated:

> The disclosure may not be part of an employment application because the language [of 15 U.S.C. § 1681b(b)(2)(A) is] intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure.

43.     The plain language of the statute also clearly indicates that the inclusion of a liability release in a disclosure form violates the disclosure and authorization requirements of the FCRA, because such a form would not consist "solely" of the disclosure.  In fact, the FTC expressly has warned that the FCRA notice may not include extraneous information such as a release.  In a 1998 opinion letter, the FTC stated:

> [W]e note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes.

44.     In a report dated July 2011, the FTC reiterated that: "the notice [under 15 U.S.C § 1681b(b)(2)(A)] may not include extraneous or contradictory information, such as a request for a

consumer's waiver of his or her rights under the FCRA."

45.     The Ninth Circuit has construed the plain language of the FCRA as expressing a clear congressional intent that *anything* other than the disclosure permitted under the statute and, if desired, an authorization, violate the standalone requirement of the FCRA.  In *Syed v. M-I, LLC*, 2017 WL M-I, LLC, 853 F.3d 492 (9th Cir. 2017), petition for rev. denied (November 13, 2017) the Ninth Circuit held that because under the plain language of the FCRA the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of surplusage such as a liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500.  The Ninth Circuit's holding was not limited to extraneous information constituting liability releases.  Instead, the holding was broadly stated, construing the definition of "solely" in a manner that applies with equal force to this action. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure: "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 505-6.  Because *Syed* is dispositive as to the "standalone" requirement imposed under the FCRA, and no intervening authority exists that limits or overrules it, *Syed* is the law of the Circuit.

46.     After *Syed*, the Ninth Circuit confirmed the breadth of its holding in *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019).

47.     In violation of Section 1681b(b)(2)(A) of the FCRA, the following provisions of Defendant's disclosure documents, among others, contain extraneous information that violates the "solely" requirement of the FCRA:

        (a)     "***I certify that the information shown on this application is true and correct to the best of my knowledge***. I authorize previous employers and references, except those indicated to the contrary on this application, to furnish Central Garden & Pet such information as it considers necessary to evaluate my qualifications for employment. ***I hereby release Central Garden & Pet from any / all liability of whatever kind and nature which, at any time, could result from obtaining and***

*making an employment decision based on such information*. I understand that, if employed, falsified statements of any kind or omissions of facts called for on this application shall be considered sufficient basis for dismissal. I consent to *and understand that*, *if employed, that I will be required to complete* a background check and a drug screen as a condition of employment. If applying for a position requiring driving on the job, *I understand that I must be reasonably insurable as determined by the Company in its sole discretion*. Employment at Central Garden & Pet is considered "at-will" which means that either the employee or the Company is free to end the employment relationship at any time with or without cause. Only the officers of the Company may authorize contracts of employment other than at-will and only if that contract is a written document which is signed by an officer of the Company." The *boldface italicized* text, in the context of a disclosure of a background investigation, is extraneous language that is not permitted in a document consisting solely of the disclosure. Moreover, the disclosure contains a release, which *Syed* expressly held to constitute a violation of the "solely" requirement.

(b)    "Credit history will only be requested where sue~ information is substantially related to the duties and responsibilities of the position for which you are applying." The text, in the context of a disclosure of a background investigation, is extraneous language that is misleading as to the nature of any consumer credit or background investigation that will actually be conducted as to Plaintiff.

(c)    "Please be advised that the 'consumer report' and/or 'investigative consumer report' will be conducted by CareerBuilder Employment Screening, LLC, 3800 Golf Road, Suite 120, Rolling Meadows, IL 60008, (866) 255-1852 screen.careerbuilder.com, *or another outside organization*." The text, in the context of a disclosure of a background investigation, is extraneous language that it is ambiguous as to the identity of the organization that will actually conduct the screening, which underscores the utility of the "solely" requirement.

(a) "**New York applicants, volunteers, contractors or employees only**: By signing below, you also acknowledge receipt of Article 23-A of the New York Correction Law." The state-specific text, in the context of a disclosure of a background investigation, is extraneous language.

(b) "**Minnesota and Oklahoma applicants, volunteers, contractors or employees only**: Please check this box if you would like to receive a copy of a consumer report if one is obtained by the Company." The state-specific text, in the context of a disclosure of a background investigation, is extraneous language. In addition, it suggests that individuals in other states are preclude from receiving a copy of a consumer report obtained by Defendant, which is confusing in light of the information in the California section below it.

(c) "**California applicants, volunteers, contractors or employees only**: By signing below, you also acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION PURSUANT TO CALIFORNIA LAW. Please check this box if you would like to receive a copy of an investigative consumer report or consumer credit report at no charge if one is obtained by the Company whenever you have a right to receive such a copy under California law." The state-specific text, in the context of a disclosure of a background investigation, is extraneous language. Moreover, it is confusing, given that, directly above that paragraph, the page implies that only individuals in Minnesota and Oklahoma can obtain a copy of a consumer report. In addition, the presence of an "acknowledgment" is extraneous. An authorization is the only permitted exception to the "solely" requirement.

(d) "I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents." The presence of an "acknowledgment" is extraneous. An authorization is the only permitted exception to the "solely" requirement.

48.     By including a release and other extraneous information, Defendants willfully disregarded the FTC's regulatory guidance and violated Section 1681b(b)(2)(A) of the FCRA.

49.     Additionally, the inclusion of the extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and "clear and accurate," and thus violates §§ 1681b(b)(2)(A) and 1681d(a). More specifically, the disclosure does not comply with the "clear and conspicuous" requirement because (1) the disclosure provisions are scattered throughout multiple documents; (2) the disclosure is not in all capital letters; (3) the disclosure is not in boldface to set off the required disclosure; (4) the ACKNOWLEDGMENT AND AUTHORIZATION with the disclosure includes multi-state information that is not a permissible element in an FCRA disclosure and reduces clarity as to what rights each applicant or employee possesses; and, (5) the disclosure provisions are set out in a dense, small font that reduces clarity. The FCRA disclosure should be a standalone document and, if desired, a bare authorization to obtain information, without being weighed down by _**any**_ extraneous information, including multiple, irrelevant state law references, confusing and contradictory rights summaries, an acknowledgement of receipt of separate documents, and impermissible references to side documents containing information not set forth in the attempted disclosure.

50.     Defendants' conduct in violation of Section 1681b(b)(2)(A) of the FCRA was and is willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and class members. Defendants' willful conduct is reflected by, among other things, the following facts:

> (a)     Defendant CENTRAL GARDEN & PET COMPANY is a large entity with access to legal advice;
>
> (b)     Defendant CENTRAL GARDEN & PET COMPANY required a purported authorization to perform credit and background checks in the process of employing the class members which, although defective, evidences Defendant's awareness of and willful failure to follow the governing laws concerning such authorizations;
>
> (c)     The plain language of the statute unambiguously indicates that inclusion of a liability release and other extraneous information in a disclosure form violates the disclosure and authorization requirements; and

(d)     The FTC's express statements, and Ninth Circuit decisions, pre-dating Defendant CENTRAL GARDEN & PET COMPANY's conduct, which state that it is a violation of Section 1681b(b)(2)(A) of the FCRA to include a liability waiver in the FCRA disclosure form.

51.     Defendants required a liability release, in the portion of the disclosure form appended to the application, along with other extraneous information, that releases all parties involved from any liability and responsibility for releasing information they have about the Plaintiff to Defendants.

52.     Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Plaintiff alleges that Defendants have a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for applicants and employees without informing such applicants of their right to request a summary of their rights under the FCRA at the same time as the disclosure explaining that an investigative consumer report may be made. Pursuant to that policy and practice, Defendants procured investigative consumer reports or caused investigative consumer reports to be procured for Plaintiff and class members, as described above, without informing class members of their rights to request a written summary of their rights under the FCRA.

53.     Accordingly, Defendants willfully violated and continue to violate the FCRA including, but not limited to, §§ 1681b(b)(2)(A) and 1681d(a). Defendants' willful conduct is reflected by, among other things, the facts set forth above.

54.     As a result of Defendants' illegal procurement of credit and background reports by way of their inadequate disclosures, as set forth above, Plaintiff and **FCRA Class** members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA. More specifically, Plaintiff and the **FCRA Class** have been injured in the following way:

(a)     Plaintiff suffered a violation of statutory rights whose analogous historical antecedents protected informational and privacy right duties that have been held amenable to the judicial process for centuries. *Sprint Commc'ns Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 285 (2008) ("We find this history and precedent 'well nigh conclusive'" on the question of standing because these "cases and

1  controversies [are] of the sort traditionally amenable to, and resolved by, the

2  judicial process.").

3  (b)  Congressional judgment has been exercised to state that a consumer experiencing

4  FCRA non-compliance has enforcement rights.  In passing the FCRA, the crucible

5  of congressional concern was protection of consumer information that would or

6  *might* impact the consumer and the banking system within which they operate, and

7  to establish credit reporting practices that utilize accurate, relevant, and current

8  information in a confidential and responsible manner.  That the rights recognized

9  by the FCRA are, in many instances, intangible, does not lessen their importance;

10  intangible rights have long been recognized as highly worthy of protection and

11  amenable to Article III standing.  Plaintiff has suffered an actionable statutory

12  violation that confers Article III standing, in part, through the clear exercise of

13  congressional judgment.

14  (c)  Plaintiff suffered an information injury in that information he was entitled to

15  receive in a specific manner and format was not provided as specified by statute.

16  (d)  A violation of statutorily protected privacy rights gives rise to a concrete injury.

17  Plaintiff has alleged that statutorily protected privacy rights were violated through

18  Defendant CENTRAL GARDEN & PET COMPANY's non-compliance with the

19  requirements of the FCRA.

20  (e)  Plaintiff was deprived of the opportunity to evaluate a clear disclosure of

21  specifically what would occur with respect to his private consumer information

22  without the distracting and confusing collection of surplusage-laden documents

23  that did not make clear whether all, some or just one were intended to constitute the

24  disclosures requires under state and federal law.

25  55.  Plaintiff, on behalf of himself and all **FCRA Class** members, seeks all available remedies

26  pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages,

27  injunctive and equitable relief and attorneys' fees and costs.

28  56.  In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges

that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o,

including actual damages and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

## FAILURE TO GIVE PROPER SUMMARY OF RIGHTS IN VIOLATION OF FCRA

### (15 U.S.C. § 1681d(a)(1) and 1681g(c))

**(By Plaintiff and the FCRA Class Against All Defendants)**

57.     Incorporation of preceding allegations:  Plaintiff incorporates all paragraphs of this

Complaint as if fully alleged herein.

58.     Section 1681d provides:

(a) Disclosure of fact of preparation

 A person may not procure or cause to be prepared an investigative consumer report on
any consumer unless–

 (1) it is *clearly and accurately disclosed* to the consumer that an investigative
consumer report including information as to his character, general reputation, personal
characteristics, and mode of living, whichever are applicable, may be made, and such
disclosure;

(2) is *made in a writing mailed, or otherwise delivered*, to the consumer, not later than
three days after the date on which the report was first requested, and

(3) *includes a statement informing the consumer of his right to request the additional
disclosures* provided for under subsection (b) of this section *and the written summary
of the rights of the consumer prepared pursuant to section 1681g(c)* of this title;

(Emphasis added.)

59.     Subsection (b) of Section 1681d(a)(1) provides:

Any person who procures or causes to be prepared an investigative consumer report on
any consumer shall, upon written request made by the consumer within a reasonable
period of time after the receipt by him of the disclosure required by subsection (a)(1) of
this section (a)(1) of this section, make a *complete and accurate disclosure of the
nature and scope of the investigation requested*; (Emphasis Added).  This disclosure
shall be made in a writing mailed, or otherwise delivered, to the consumer not later than
five days after the date on which the request for such disclosure was received from the
consumer or such report was first requested, whichever is the later.

60.     Defendant did not comply with Section 1681d(a)(1)(b) because the disclosures fail to

inform the consumer of the right to have the person who procured the report provide a complete and

1    accurate disclosure of the nature and scope of the investigation requested.

2        61.    As a result of Defendants' failure to provide required disclosures, as set forth above,

3    Plaintiff and **FCRA Class** members have been injured including, but not limited to, having their statutory

4    rights to information violated.  More specifically, Plaintiff has been injured in the following way:

5        (a)    Plaintiff suffered a violation of statutory rights whose analogous historical

6                antecedent protected informational right duties that have been held amenable to the

7                judicial process for centuries. *Sprint Commc'ns Co., L.P. v. APCC Services, Inc.*,

8                554 U.S. 269, 285 (2008) ("We find this history and precedent 'well nigh

9                conclusive'" on the question of standing because these "cases and controversies

10               [are] of the sort traditionally amenable to, and resolved by, the judicial process.").

11       (b)    Congressional judgment has been exercised to state that a consumer experiencing

12               FCRA non-compliance has enforcement rights.  In passing the FCRA, the crucible

13               of congressional concern was protection of consumer information that would or

14               *might* impact the consumer and the banking system within which they operate, and

15               to establish credit reporting practices that utilize accurate, relevant, and current

16               information in a confidential and responsible manner.  That the rights recognized

17               by the FCRA are, in many instances, intangible, does not lessen their importance;

18               intangible rights have long been recognized as highly worthy of protection and

19               amenable to Article III standing.  Plaintiff has suffered an actionable statutory

20               violation that confers Article III standing, in part, through the clear exercise of

21               congressional judgment.

22       (c)    Plaintiff suffered an information injury in that information he was entitled to

23               receive in a specific manner and format was not provided as specified by statute.

24       (d)    Plaintiff was deprived of the opportunity to evaluate a clear disclosure of

25               specifically what would occur with respect to his private consumer information

26               without the distracting and confusing collection of surplusage-laden documents

27               that did not make clear whether all, some or just one were intended to constitute the

28               disclosures requires under state and federal law.

62.     Plaintiff, on behalf of himself and all **FCRA Class** members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, injunctive and equitable relief and attorneys' fees and costs.

## THIRD CAUSE OF ACTION

## FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF ICRAA

### (Cal. Civ. Code § 1786 *et seq.*)

### (By Plaintiff and the ICRAA Class Against All Defendants)

63.     <u>Incorporation of preceding allegations</u>:  Plaintiff incorporates all paragraphs of this Complaint as if fully alleged herein.

64.     Defendants are "persons" as defined by Section 1786.2(a) of the Investigative Consumer Reporting Agencies Act ("ICRAA").

65.     Plaintiff and **ICRAA Class** members are "consumers" within the meaning Section 1786.2(b) of the ICRAA, because they are "individuals."

66.     Section 1786.2(c) of the ICRAA defines "investigative consumer report" as:

a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means.

Thus, a background checks qualifies as an investigative consumer report under the ICRAA

67.     Section 1786.16(a)(2) of the ICRAA provides, in relevant part:

If, at any time, an investigative consumer report is sought for employment purposes…the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:

(B) The person procuring or causing the report to be made provides a ***clear and conspicuous*** disclosure in writing to the consumer at any time before the report is procured or caused to be made ***in a document that consists solely of the disclosure***, that:

(i) An investigative consumer report may be obtained.

(ii) The permissible purpose of the report is identified.

(iii) The disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living.

(iv) Identifies the ***name, address, and telephone number of the investigative***

*consumer reporting agency* conducting the investigation.

(v) Notifies the consumer in writing of the nature and scope of the investigation requested, including the provisions of Section 1786.22.

(vi) *Notifies the consumer of the Internet Web site address of the investigative consumer reporting agency* identified in clause (iv), or, *if the agency has no Internet Web site address, the telephone number of the agency*, where the consumer may find information about the investigative reporting agency's privacy practices, including whether the consumer's information will be sent outside the United States or its territories and information that complies with subdivision (d) of Section 1786.20. This clause shall become operative on January 1, 2012.

(C) The consumer has authorized in writing the procurement of the report.

(Emphasis added.)

68.     As described above, Plaintiff alleges that in evaluating his and other **ICRAA Class** members for employment, Defendants procured or caused to be prepared investigative consumer report (e.g. background checks), as defined by Cal. Civ. Code § 1786.2(c).

69.     Under the ICRAA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. Cal. Civ. Code § 1786.16(a)(2)(B)-(C). The inclusion of the Release and other extraneous information, therefore, violates § 1786.16(a)(2)(B) of the ICRAA.

70.     Because the purported disclosures are embedded with extraneous information, and are not clear and unambiguous disclosures in stand-alone documents, they do not meet the requirements under ICRAA. Exhibit A attached hereto contains all of the extraneous surplusage identified hereinabove.  The disclosure fails to clearly identify the agency responsible for the investigative consumer report, noting at one point that it could ambiguously be "another outside organization." and omitting the identity of any involved credit bureau.

71.     The plain language of the statute clearly indicates that the inclusion of a liability release in a disclosure form violates the disclosure and authorization requirements of the ICRAA, because such a form would not consist "solely" of the disclosure.  Exhibit A, which refers to a background check disclosure, includes a liability release.  In additional, the exculpatory acknowledgments are also intended to serve as defensive exculpatory provisions that operate much like releases to extinguish certain types of

claims.

72.     By including the release and other extraneous information, Defendants willfully violated § 1786.16(a)(2)(B) of the ICRAA.  Additionally, the inclusion of the extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and thus violates § 1786.16(a)(2)(B).

73.     Based upon facts that are likely to have evidentiary support after a reasonable opportunity for investigation and discovery, Plaintiff alleges that Defendants have a policy and practice of failing to provide adequate written disclosures to applicants and employees, before procuring background checks or causing background checks to be procured, as described above.  Pursuant to that policy and practice, Defendants procured background checks or caused background checks to be procured for Plaintiff and **ICRAA Class** members without first providing a written disclosure in compliance with § 1786.16(a)(2)(B) of the ICRAA, as described above.

74.     Defendants' conduct in violation of § 1786.16(a)(2)(B) of the ICRAA was and is willful and/or grossly negligent. Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and **ICRAA Class** members. Defendants' willful conduct is reflected by, among other things, the following facts:

(a)     Defendant CENTRAL GARDEN & PET COMPANY is a large entity with access to legal advice;

(b)     Defendant CENTRAL GARDEN & PET COMPANY required a purported authorization to perform credit and background checks in the process of employing the class members which, although defective, evidences Defendant CENTRAL GARDEN & PET COMPANY's awareness of and willful failure to follow the governing laws concerning such authorizations; and

(c)     The plain language of the statute unambiguously indicates that inclusion of a liability release and other extraneous information in a disclosure form violates the disclosure and authorization requirements, and that the disclosure form must contain the name, address, phone number, and/or website address of the investigative consumer reporting agency conducting the investigation.

75.     As a result of Defendants' illegal procurement of background reports by way of their

1  inadequate disclosures, as set forth above, Plaintiff and **ICRAA Class** members have been injured

2  including, but not limited to, having their privacy and statutory rights invaded in violation of the ICRAA.

3       76.     Plaintiff, on behalf of himself and all **ICRAA Class** members, seeks all available remedies

4  pursuant to Cal. Civ. Code § 1786.50, including statutory damages and/or actual damages, punitive

5  damages, and attorneys' fees and costs.

6       77.     In the alternative to Plaintiff's allegation that these violations were willful or grossly

7  negligent, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any,

8  under Cal. Civ. Code § 1786.50(a), including actual damages and attorneys' fees and costs.

9

10  ## **PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief

12  and judgment against Defendants as follows:

13       A.  An order that the action be certified as a class action;

14       B.  An order that Plaintiff be appointed class representative;

15       C.  An order that counsel for Plaintiff be appointed class counsel;

16       D.  Statutory penalties;

17       E.  Civil penalties;

18       F.  Punitive damages, if available;

19       G.  Injunctive relief, if available;

20       H.  Costs of suit;

21       I.  Interest;

22       J.  Reasonable attorneys' fees; and

23       K.  Such other relief as the Court deems just and proper or as authorized by statute.

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:     December 29, 2020          **MOON & YANG, APC**

By: _____

Kane Moon
H. Scott Leviant
Ani Martirosian

Attorneys for Plaintiff

# Exhibit "A"

PLEASE PRINT NEATLY AND MAKE SURE THE PRINTING IS LEGIBLE

First Name: GERALD

Middle Name: RAY

Last Name: WARR

Maiden Name: GERALD R WARR

Date Changed:

Other last names used:

Date Changed:

Other last names used:

Date Changed:

Other last names used:

Date Changed:

List all cities and states where you have lived for the past 10 years - Attach additional sheet if necessary

| | Street | City | County | State | ZIP | How Long? |
|---|---|---|---|---|---|---|
| Current: | ██████████████████████████████████████ | | | | | |
| 2: | | | | | | |
| 3: | | | | | | |
| 4: | | | | | | |

Present Phone Number (with area code): ████████████████

Social Security Number: ████████████████

Date of Birth* (MM/DD/YYYY): ████████████

Gender*
☒ Male   ☐ Female

Driver's License Number: ████████████

Driver's License State: SAC, CA.

*This information will be used for background screening purposes only and will not be used as hiring criteria.

**NOTE: YOU MUST RETURN PAGES 1 - 3**

## PRIOR CONVICTIONS

Note: Falsification of information may be grounds for disqualification or termination.

Have you ever been convicted of, plead guilty, no contest or nolo contendere, to a misdemeanor or felony (or to an indictable offense if in New Jersey)?*

*Do not report any conviction that has been sealed, expunged, statutorily eradicated, annulled, impounded, erased, dismissed under a first offender's law, pardoned by the Governor or which state law allows you to lawfully deny as set forth below.  You are also not required to disclose violations, infractions, petty misdemeanors or summary offenses.

A conviction will not necessarily be a bar to employment. This information will only be used for job-related purposes consistent with applicable law and is only relevant in determining whether the conviction is related to the job for which you are applying. Factors such as age at the time of the offense(s), recentness of the offense(s), seriousness of the offense(s), nature of the violation(s), its relation, if any, to the job you are seeking, and rehabilitation will be taken into account.  Failure to honestly answer these questions will result in discontinued consideration of your application or termination of employment.

X NO    ☐ YES (Please see below)

If you answered Yes the above questions, provide city, county, and state of conviction and date and nature of the offense, along with sentencing information.

Please also provide any other information you would like the Company to consider including but not limited to: the time that has elapsed since the offense, your age at the time of the offense, facts or circumstances surrounding the offense, the number of offenses for which you have been convicted, your employment history before and after conviction, evidence of rehabilitation, and/or other mitigating factors.  Enter N/A if you answered No and this question does not apply to you.

* **California applicant/residents:** You need not disclose any referral to, and participation in, any pre-trial or post-trial diversion program, or any misdemeanor convictions for which probation has been successfully completed and discharged.  Do not list any marijuana-related misdemeanor convictions over two years old, or felony marijuana convictions under California Health and Safety Code Section 11360 (c) which occurred prior to 1976.

California applicants should also read and acknowledge, by initialing, the following statement:

If the Company obtains public records (e.g., records of arrest, conviction, civil rights, tax lien, or outstanding judgment) itself without using a third party, then I am entitled to a copy of such records, unless I check the box below.  If I am not hired or other adverse action is taken because of the records, then I will receive a copy even if I do check the box below.

NOTE: YOU MUST RETURN PAGES 1 - 3

**ACKNOWLEDGMENT AND AUTHORIZATION**

I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents. I hereby authorize the obtaining of "consumer reports" and/or "investigative consumer reports" by the Company at any time after receipt of this authorization and throughout my employment, if applicable. To this end, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer, or insurance company to furnish any and all background information requested by Aurico Reports Inc., 116 W. Eastman St., Arlington Heights, Illinois, 60004, (866) 255-1852, www.aurico.com, another outside organization acting on behalf of the Company, and/or the Company itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

<u>New York applicants, volunteers, contractors or employees only:</u>   By signing below, you also acknowledge receipt of Article 23-A of the New York Correction Law.

<u>Minnesota and Oklahoma applicants, volunteers, contractors or employees only:</u> Please check this box if you would like to receive a copy of a consumer report if one is obtained by the Company. ☐

<u>California applicants, volunteers, contractors or employees only:</u> By signing below, you also acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION PURSUANT TO CALIFORNIA LAW. Please check this box if you would like to receive a copy of an investigative consumer report or consumer credit report at no charge if one is obtained by the Company whenever you have a right to receive such a copy under California law. ☐

Signature: _____     Date: 11-25-19

NOTE: YOU MUST RETURN PAGES 1 - 3

## DISCLOSURE AND AUTHORIZATION
**IMPORTANT** -- PLEASE READ CAREFULLY BEFORE SIGNING AUTHORIZATION

### DISCLOSURE REGARDING BACKGROUND INVESTIGATION

Central Garden & Pet ("the Company"), in connection with your employment and, if you are hired, throughout your employment, may obtain information about you for employment/volunteer or contractor purposes from a  third party consumer reporting agency. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer  report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and   which can involve personal interviews with sources such as your neighbors, friends, or associates.  These reports may contain  information regarding your credit history, criminal history, social security verification, motor vehicle records ("driving records"),   verification of your education or employment history, or other background checks.  Credit history will only be requested where such  information is substantially related to the duties and responsibilities of the position for which you are applying. You have the right,   upon proper request to request whether a consumer report has been run about you, and disclosure of the nature and scope of any  investigative consumer report and to request a copy of your report.  Please be advised that the "consumer report" and/or  "investigative consumer report" will be conducted by CareerBuilder Employment Screening, LLC, 3800 Golf Road, Suite 120, Rolling Meadows, IL 60008,   (866) 255-1852. screen.careerbuilder.com, or another outside organization.

**NOTE: YOU MUST RETURN PAGES 1 - 3**

**Alere**

**CUSTODY AND CONTROL FORM**

450 Southlake Blvd., Richmond, VA 23236 | Phone: 800.433.3823 | Fax: 804.379.5919

**F3637773**

F3637773

SPECIMEN ID NUMBER

**LAB NUMBER**

**STEP 1: To be completed by Collector or Client Representative**

**A. Client Name, Address, Phone No., & Fax No.:**

CENTRAL GARDEN & PET
1340 TREAT BLVD
STE 600
WALNUT CREEK, CA 94597
925-948-4000 000-000-0000

Facility Number

L11839916

**B. MRO Name, Address, Phone No., & Fax No.:**

DR. STEPHEN KRACHT
8140 WARD PKWY SUITE 275
KANSAS CITY, MO 64114
888-888-7088 913-498-8038

**C. Donor Name:**

Last Name: W A R R

First Name: G E R A L D

**D. Donor SSN or Other ID:** ███████

**E. Reason for Test:** ☒ Pre-Employment ☐ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other: _____

**F. Collection Site Name & Address:**  **Collector Phone No.:** (Enter here if not printed below)

PHONE:
FAX:

Collector Number

**STEP 2: To be completed by Collector** Donor provides specimen to Collector using oral fluid collection device instructions. Be sure to instruct the donor to place the tamper evident seal(s) across the top of the specimen vial and down the sides, date and initial.

Collector Remarks:

**STEP 3: To be completed by Donor**

I certify that provided my specimen to the collector; that I have not adulterated it in any manner; each specimen was sealed with tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen is correct.

X _____

PRINT Donor Name (First, MI, Last): GERALD ROW WARR

Date (Mo./Day/Yr.): 11-25-19

Daytime Phone Number          Evening Phone Number          Date of Birth (Mo./Day/Yr.)

**STEP 4: To be completed by Collector**

Select a test panel from the list below. If you do not indicate a panel, the dominant panel on file for the client facility listed above in STEP 1A will be used.

**Panel:** ☐ 1: 3509 ☐ 2: ☐ 3: ☐ 4: ☐ 5: ☐ 6:
9DR ORAL FLUID

**STEP 5: Chain of Custody - Initiated by Collector and completed by Laboratory**

I certify that the specimen given to me by the donor identified above was collected, labeled, sealed, and released as noted in accordance with applicable requirements.

T R E B  W  B U C K N E R
PRINT Collector Name (First, MI, Last)

Date Collected (Mo./Day/Yr.): 1 1 / 2 5 / 1 9

X _____
Signature of Collector

Time Collected: 1 1 : 4 5 ☒ AM ☐ PM

**SPECIMEN RELEASED TO:**

Courier

**Received at Laboratory:**

X _____
Signature of Accessioner          Date (Mo./Day/Yr.)

PRINT Accessioner's Name (First, MI, Last)

Specimen Seal(s) Intact?
☐ Yes ☐ No

**SPECIMEN RELEASED TO:**

**TEMPORARY STORAGE**



PEEL


PLACE ON
CONTAINER

Signature ___/___/___ Date    Donor's Initials

PLACE ON
CONTAINER

Signature of Collector

___/___/___ Date    Donor's Initials



SAGE#: L075472
FACE#: L11839916  Date: 24Sep19
Phone: (800)433-3823
Dept:    Weight: 1 LBS
COD :
DV :    0.00
Svcs: PRIORITY OVERNIGHT
TRCK: 1257 7184 3893

Shipping : 0.0
Special : 0.0
Handling : 0.0
Total : 0.0

5618596202

© 2011 Alere, Inc. All rights reserved. Alere and the logo is a trademark of the Alere group of companies.

**COLLECTOR**

Candidate Information:

|  | |  | |
|---|---|---|---|
| First Name: | **Gerald** | Mobile #: | |
| Last Name: | **Warr** | Email: | ▮▮▮▮▮▮▮▮▮▮▮ |
| Middle Name: | **Ray** | Source Detail: | |
| Phone (###-###-####): | ▮▮▮▮ | | |

Current Address

| | | | |
|---|---|---|---|
| Street address: | ▮▮▮▮▮ | ZIP/Postal code: | ▮▮ |
| City: | **Sacramento** | Country: | **United States** |
| State/Territory: | **CA** | | |

General

Sponsorship Required?: **No**

Are You Age 18+?: **Yes**

Previous Employee?: **No**

Previous Employee Details:

Relative(s) Employed?: **No**

Relatives Employed Detail:

Referral Source

Source: **CareerBuilder**

Referred By:

Desired Employment Information

Date Available to Start: **11/25/19**

Salary Expectations: **16**

Driver's License Information

| | |
|---|---|
| Valid/Active Driver's License: | DNU_License Restricted: |
| Driver's License Number: | Please explain: |
| Driver's License State: | Proof of Car Insurance: |
| License Status?: | |

Education History:

Education

Education Level: **High School Diploma**          Field of study: **English**

School Name: **Luther Burbank**  Degree Achieved: **N/A**

City: **Sacramento**  Did you Graduate?: **Yes**

State/Territory: **CA**

---

Technical Skills / Special Training

Technical Skills: **Microsoft Excel, SAP**

Language/Training/Skills:

---

Employment History:

Employer

| | | |
|---|---|---|
| Title: **Forklift** | Company Phone: **9163265171** |
| Date From: **March 2018** | Direct Supervisor: |
| Date To: **May 2019** | Supervisor Title: |
| Reason for Leaving: Temp service contract | Ok To Contact Employer: **Yes** |
| Explanation: | DNU_Ok To Contact: |
| Final Rate of Pay: | Safety Sensitive Function: |
| | Current Employer?: **Yes, this is my current employer** |
| Company Name: **Randstad** | Subject to FMCSRs?: |
| Company Street Address: **4ave midtown** | State/Territory: |
| Company City, State: **Sacramento ca** | |

**Responsibilities and Duties**

Description:  Forklift / order selector/ loader unloaded.

---

References:

References

| | |
|---|---|
| Reference Name: | Years Known: |
| Company: | Accident Date: |
| Title: | Nature of Accident: |
| Relationship to Applicant: | Fatalities: |
| Email: | Injuries: |
| Phone: | Hazardous Material Spill: |

---

Resume and Cover Letter:

Attach resume:

---

**Applicant's Certification and Agreement**

I certify that the information shown on this application is true and correct to the best of my knowledge. I authorize previous employers and references, except those indicated to the contrary on this application, to furnish Central Garden & Pet such information as it considers necessary to evaluate my qualifications for employment. I hereby release Central Garden & Pet from any / all liability of whatever kind and nature which, at any time, could result from obtaining and making an employment decision based on such information.

I understand that, if employed, falsified statements of any kind or omissions of facts called for on this application shall be considered sufficient basis for dismissal. I consent to and understand that, if employed, that I will be required to complete a background check and a drug screen as a condition of employment. If applying for a position requiring driving on the job, I understand that I must be reasonably insurable as determined by the Company in its sole discretion.

Employment at Central Garden & Pet is considered "at-will" which means that either the employee or the Company is free to end the employment relationship at any time with or without cause. Only the officers of the Company may authorize contracts of employment other than at-will and only if that contract is a written document which is signed by an officer of the Company.

I Agree:                                      Full Legal Name:

**CENTRAL GARDEN & PET IS AN EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION EMPLOYER OF FEMALES, MINORITIES, VETERANS, AND DISABLED**

---

Requisition Information:

Position Title:  **Warehouse Associate - Night Shift - Pet Distribution**

Job Code:  **6007**

### Central Pet Distribution is hiring Warehouse Associates! Night Shift (Monday through Friday)

Do you love pets and love working in a fast-paced environment? Our growing company is seeking experienced warehouse associates in our Sacramento warehouse operation. In this operation you will be primarily responsible for pulling orders and loading trucks in a timely, accurate and damage free manner.  If you are dependable, responsible and committed to safety, this is the job for you!

Location: Central Pet Distribution Center on Florin Perkins Road in Sacramento, CA

Shift Details: Night Shift – The scheduled hours are Monday through Friday 5:00PM to 1:30AM, and we work until all the trucks are loaded. Starting wage is $13.50/hour with a $500 bonus after 90 days.

### MEASURES OF SUCCESS:

- Process transactions utilizing RF technology or paper if necessary
- Pick orders that are scheduled to ship that day and package merchandise to ensure safe transport
- Inspect merchandise to ensure only quality product is used to complete the order

Description:

- Assist with receiving of inbound product; including inspection of product for damage or infestation, verification of items shipped, put product away and record shortages.
- Utilize pallet jacks, pallet riders, tow tractors, stand-up reach forklift and sit-down forklift where applicable
- Utilize stretch wrap machine where applicable
- Assist with daily cleanup activities in accordance with the company food safety program
- Assist with cycle count and physical inventory activities
- Assist with processing of product returns; including putting product back to stock and disposing of unsaleable inventory

### IDEAL CANDIDATE ATTRIBUTES:

- 1+ year related warehouse experience
- Attention to detail and ability to work under pressure in a deadline driven environment
- Ability to read and write legibly in English, carry out oral instructions in English, count and do basic math
- Experience working with material handling equipment and RF scanner experience preferred
- Ability to lift and move up to 50 pounds and stack on a pallet or cart at a height of 5 feet in a safe manner, with or without accommodation
- Position requires the ability to stand and walk for long periods of time, and frequent bending and squatting throughout the entire shift
- Ability to work in a constant state of alertness and safe manner

### WORKING CONDITIONS:

- Work is conducted in a warehouse environment with temperature changes depending on the season
- Working inside trailers while loading or unloading trucks

### BENEFITS PACKAGE & EMPLOYEE PROGRAMS:

- Comprehensive Medical, Dental, and Vision Insurance
- Free Life and Disability Insurance
- Health and Dependent Care Flexible Spending Accounts
- 401k with 3% company match and annual profit-sharing bonus!
- Paid vacation, holidays and sick time
- Employee Assistance Program
- Discount on Pet supplies, cell phones, movie tickets, gym memberships, and more!
- Education Assistance
- Referral Program with cash bonus

### TO APPLY: Email resume to akume@central.com.

Central Garden & Pet Company (NASDAQ: CENT and CENTA) is a leading innovator, marketer and producer of quality branded products for

the pet, lawn and garden supplies markets. Please visit our website for additional information www.central.com.

We are an equal opportunity employer and all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, national origin, disability status, protected veteran status, sexual orientation, gender identity, or any other characteristic protected by law.